**E-FILED**
Friday, 20 July, 2007  02:36:02 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | | |
|---|---|---|
| WILLIAM MCGOWAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  06-cv-4003 |
| | ) | |
| DEERE & COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R

Before the Court are the Motion for Summary Judgment filed by Defendant, Deere & Company, on May 1, 2007 [Doc. 13], the Motion to Strike Affidavit of William Candler filed by Plaintiff, William McGowan, on June 19, 2007 [Doc. 17], and the Motion to Strike Affidavit of Richard D'Hooge filed by Plaintiff on June 19, 2007 [Doc. 19].  For the reasons that follow, the Motion for Summary Judgment is GRANTED, the Motion to Strike Candler's Affidavit is DENIED, and the Motion to Strike D'Hooge's Affidavit is MOOT.

### BACKGROUND

Plaintiff has worked for Defendant in various capacities from 1974 to the present (he was laid off from 1982 to 1989 or 1990).  Since 2003, he has been employed as a "retrieve and storage" stocker and truck driver.

The allegations in the Complaint arise, in part, from Plaintiff's back condition and the manner in which Plaintiff was treated by Defendant as a result.  In September 1999, Plaintiff injured his back and sought treatment.  At that time, Plaintiff was examined by a number of doctors including Dr. William Candler, who also is employed by Defendant as its company physician.  In March of 2000, Plaintiff worked under a 25 pound or 35 pound weight restriction.

Plaintiff underwent surgery on his back by Dr. Giuseppe Lanzino, a neurosurgeon, on June 2, 2004.  In a form signed by Anne Wagenbach, a Certified Nurse Practitioner for Dr. Lanzino's practice, Plaintiff was released for work on August 2, 2004 with a 50 pound weight restriction that would last for one month. Additionally, a letter from Dr. Lanzino to Dr. Brian Cady (Plaintiff's treating physician) dated July 31, 2004, outlined the 50 pound restriction with the addition that after a month, "he should be able to go up to full duty at that time." Plaintiff returned to work on August 2, 2004.

A few days later, however, Dr. Candler stated to Plaintiff that he was still under a 25 pound weight restriction.  On October 20, 2004, Nurse Wagenbach signed another form which stated "may lift up to 80 pounds."  Dr. Candler received this note in November 2004 and called Dr. Lanzino's office regarding Plaintiff's restrictions.  Dr. Candler stated that Dr. Lanzino

2

"retracted the note and reiterated that he did not disagree with the 25 pound restriction." (William Chandler Aff. ¶6).

On June 8, 2005, Plaintiff underwent a Functional Capacity Evaluation ("FCE") which was performed by Greg Monson, a Physical Therapist. Monson generally concluded that Plaintiff was capable of performing "medium-heavy" work. The report contains very specific weight limitations, the frequency that various weights can be lifted, and the manner in which those weights can be lifted. For example, the report indicates that Plaintiff can lift 85 pounds from floor to waist infrequently, or only 1 to 4 repetitions per day. The report also indicates that he can lift 25 pounds frequently, meaning 33 to 250 repetitions per day, from waist to eye level and as a "one hand carry." The maximum weight the Plaintiff could lift was 85 pounds, floor to waist; 50 pounds, waist to eye level; 50 pounds as a "one hand carry;" 70 pounds as a "two hand carry;" and 85 and 75 pounds as push or pull weight, respectively.

A year later, on June 8, 2006, Dr. Cady penned a letter to Defendant stating that he finds "nothing in his [i.e. Plaintiff's] history or physical exam to contradict the finding of the functional capacity evaluation." (Pl. Ex. 6). When asked further what he believes Plaintiff's "specific capabilities and limitations" are, Dr. Cady reiterated there

3

were no clinical findings to contradict the FCE.  However, he

also stated:

> I did not repeat the Functional Capacity Evaluation as
> this does not fall under the realm of my area of
> expertise.  I am not certain of the restrictions
> placed on Mr. McGowen by Dr. Candler as you did not
> include these in your letter.  Perhaps, an additional
> examination by a third party physiatrist and/or
> physical therapist would be appropriate in this
> matter.
>
> (Pl. Ex. 8).

Nonetheless, Dr. Candler concluded that:

> It was my judgment, based on my knowledge of Mr.
> McGowen's history of back pain, discussions with Dr.
> Lanzino and review of a functional capacity
> evaluation, that the restriction that Mr. McGowen not
> lift, push or pull more than 25 pounds was appropriate
> and nothing indicated to me that my judgment was
> incorrect.
>
> (Candler Aff. ¶ 7).

Based on Dr. Candler's evaluation, then, Plaintiff was

considered by Defendant to have a 25 pound weight restriction on

lifting, pushing and pulling.

As a result of the imposition of this weight restriction,

Plaintiff was unable to secure two different positions.

Plaintiff states that he bid for a sheet fabricating job in

Department 114 that involved the use of a "CNC laser."  (McGowen

Dep. p. 18).  He states that he was the senior bidder for this

job and it should have been awarded to him but for the weight

restriction.  He also indicates that he bid on the same job in

4

Department 106.  Again, he was the senior bidder on this job but was not awarded the job because of the weight restriction. (McGowen Dep. pp. 18-19).  Attached to Plaintiff's affidavit is a document that outlines the "primary function," the "types of machines, tools and equipment used or operated," and the "job details" of the CNC Sheet and Plate Fabricator ("CNC Job"). (McGowen Aff. Ex. A).  The document does not indicate that the job has any lifting requirements.  However, Andrew Enright and Richard D'Hooge, module leaders in Departments 114 and 106, respectively, indicate that the job requires employees to lift, pull, and push more than 25 pounds.[1]  (Richard D'Hooge Aff ¶ 3; Andrew Enright Aff. ¶ 3).

During the relevant time period, Plaintiff was subject to a Collective Bargaining Agreement and was a member of the International Union United Automobile Aerospace and Agricultural Implement Workers of America.[2]  Despite Plaintiff's requests, the Union did not grieve Plaintiff's failure to acquire the CNC Jobs in Departments 106 and 114.  However, the Union did file a

---

[1] Erich Wessels, who is the Industrial Relations Administrator, indicates in his affidavit that the industrial relations board, which would have placed Plaintiff in an appropriate job position, relied on the module leader's assessment of the weight requirements in finding that Plaintiff was not qualified for the CNC jobs. (Erich Wessels Aff. ¶¶ 2, 3, 13).  Plaintiff offers no evidence to rebut this fact.

[2] Plaintiff does not specifically admit to these facts (he indicates that they are immaterial) but has provided no contrary evidence in his response to Defendant's statement of material fact 12.

grievance and requested a third medical opinion regarding
Plaintiff's weight restriction.   This grievance currently is
pending.[3]

Plaintiff alleges that Dr. Candler's imposition of the 25
pound weight restriction constitutes discrimination on account
of his race.   As a result of this discrimination, Plaintiff
alleges, he was denied the CNC jobs.   Plaintiff specifically
alleges in Count I of the Amended Complaint that Defendant
discriminated against him on account of his race in violation of
42 U.S.C. § 2000e ("Title VII"), et seq., by failing to place
him in the "machine operator" position.   In this respect,
Plaintiff argues that he was not reassigned to the machine
operator position in Department 400, first shift, which he held
prior to his injury in 1999.   In Count II, Plaintiff alleges
that Defendant discriminated against him in violation of 42
U.S.C. § 1981 by failing to award him the CNC jobs.   Finally, in
Count III, Plaintiff alleges that Defendant violated the
Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et
seq., by discriminating against him based on a perceived
disability.   In his motion for summary judgment, Plaintiff also

---

[3]  This information is contained in Defendant's statement of
material fact 22.  While Plaintiff disputes some of the
statements made in this material fact, he does not dispute these
facts.

6

appears to contend that he was not given an "income security
benefit" on account of his race.

In addition to the Motion for Summary Judgment, two Motions
to strike also are before the Court.  Plaintiff seeks to strike
the affidavits of Dr. Candler and D'Hooge which are attached to
Defendant's reply brief.  [Doc. 16].

**DISCUSSION**

**Motions to Strike**

Plaintiff seeks to strike Dr. Candler's affidavit, or parts
thereof, because, he argues, it contains inadmissible hearsay
and because it contains an opinion "raised for the first time in
the reply to the summary judgment resistance."  The
objectionable paragraphs of Dr. Candler's affidavit state:

> 5.  As reflected in Clinic Progress Notes, which were
> kept in the ordinary course of business, a copy of
> which is attached hereto as Exhibit B hereto, in
> August 2004 I discussed with Dr. Lanzino, a
> neurosurgeon who performed Mr. McGowan's back surgery
> on June 2, 2004, whether the restriction should remain
> in place.  Dr. Lanzino agreed that the 25 pound
> restriction was appropriate and should remain in
> place.
>
> 6.  In November 2004, Mr. McGowen presented a note
> that he could lift 80 pounds.  Upon reviewing the
> note, I contacted Dr. Lanzino, who told me that he was
> unaware that it had been sent by his office.  Dr.
> Lanzino retracted the note and reiterated that he did
> not disagree with the 25 pound restriction.
>
> 7.  It was my judgment, based on my knowledge of Mr.
> McGowen's history of back pain, discussions with Dr.
> Lanzino and review of a functional capacity
> evaluation, that the restriction that Mr. McGowan not

lift, push or pull more than 25 pounds was appropriate
and nothing indicated to me that my judgment was
incorrect.

(Candler Aff. ¶¶ 5-7).

Plaintiff certainly is correct that hearsay statements are generally not admissible as evidence either at trial or in support of a Motion for Summary Judgment. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). Federal Rule of Evidence 802 provides that hearsay, which is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Rule 801(c), is not admissible except as provided by the Rules. Thus, if Defendant seeks to offer into evidence Dr. Candler's assertion as proof that Dr. Lanzino said that he had no problem with the 25 pound weight restriction, it would be inadmissible hearsay.

However, the statements are not hearsay: they are offered as an explanation of what motivated Dr. Candler to maintain the 25 pound weight restriction and not as evidence of what Dr. Lanzino said or did not say. As such, the statements are not hearsay.

Plaintiff next argues that the statements must be stricken because they were raised for the first time in a reply brief. In Plaintiff's response to the Motion for Summary Judgment, he argued that Dr. Candler's insistence on the weight restriction

8

had no basis in fact and is therefore merely a pretext for
discrimination.  To counter this argument, Defendant provided an
affidavit of Dr. Candler which explained why he maintained the
weight restriction.  The evidence goes directly to Plaintiff's
contention that Defendant's proffered reason was merely a lie.
This evidence also bolsters Defendant's argument, in its Motion,
that it had a legitimate business reason for its decisions.
Plaintiff can hardly be surprised by this evidence especially as
Dr. Candler was disclosed as a witness with relevant
information.  If Plaintiff wanted to discover Dr. Candler's
reasoning, it would have been an easy task to depose the doctor.
Defendant cannot be faulted for providing evidence to support
its arguments made in response to Plaintiff's arguments.  See
Beck v. University of Wisconsin Board of Regents, 75 F.3d 1130,
1134, n.* (7th Cir. 1996) (quoting Baugh v. City of Milwaukee,
823 F.Supp. 1452, 1457 (E.D. Wis. 1993)).   Therefore,
Plaintiff's motion to strike the affidavit of Dr. Candler is
without merit.

     Plaintiff next seeks to strike the affidavit of Richard
D'Hooge.  Plaintiff indicates that D'Hooge was not disclosed in
Defendant's Federal Rule of Civil Procedure 26(a) initial
disclosures, nor were such disclosures amended to identify
D'Hooge.  Defendant does not dispute this contention, but argues
that D'Hooge's testimony was necessary in light of Plaintiff's

unexpected assertion, in his response brief, that another employee, whom D'Hooge supervised, is a comparable employee to Plaintiff.[4]  Thus, Defendant argues that it did not anticipate that it would need D'Hooge's testimony.  Plaintiff's motion to strike D'Hooge's affidavit is MOOT as it is unnecessary for a determination of the Motion for Summary Judgment (as shown below).

**Motion for Summary Judgment**

     Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

     Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears

---

[4] Pursuant to the McDonnell Douglas test in discrimination cases, Plaintiff is required to identify a similarly situated person not in the protected class who was treated differently.

10

the burden of proof at trial." Warsco v. Preferred Tech. Group,
258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp., 477
U.S. at 322-24.  "The nonmovant may not rest upon mere
allegations in the pleadings or upon conclusory statements in
affidavits; it must go beyond the pleadings and support its
contentions with proper documentary evidence." Chemsource, Inc.
v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

        This Court must nonetheless "view the record and all
inferences drawn from it in the light most favorable to the
[non-moving party]." Holland v. Jefferson Nat. Life Ins. Co.,
883 F.2d 1307, 1312 (7th Cir. 1989).  In doing so, this Court is
not "required to draw every conceivable inference from the
record -- only those inferences that are reasonable." Bank
Leumi Le-Isreal, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).
Therefore, if the record before the court "could not lead a
rational trier of fact to find for the non-moving party," then
no genuine issue of material fact exists, and the moving party
is entitled to judgment as a matter of law. McClendon v.
Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986)).  However, in ruling on a motion for summary
judgment, the court may not weigh the evidence or resolve issues
of fact; disputed facts must be left for resolution at trial.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

Plaintiff does not dispute that he is incapable of presenting facts that would support his claim that he was discriminated against in violation of the ADA.  Plaintiff may show that he is disabled under the ADA if he can prove that his employer regarded him as having an impairment that substantially limits a major life activity.  42 U.S.C. § 12102(2); <u>Kampmier v. Emeritus Corp.</u>, 472 F.3d 930, 937 (7th Cir. 2007).  Plaintiff has presented no evidence that Defendant regarded him as having a disability that substantially limits a major life activity. Therefore this claim must fail as a matter of law.

Plaintiff does, however, contend that he was discriminated against on account of his race.  Plaintiff raises these claims pursuant to Title VII and § 1981 which are analyzed under the same standard.  <u>Fane v. Lock Reynolds, LLP</u>, 480 F.3d 534, 538 (7th Cir. 2007).  As Plaintiff has presented no direct evidence of discrimination, he is proceeding under the familiar burden shifting method articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Thus, Plaintiff must show that:

> 1.  He is a member of a protected class;
>
> 2.  he was qualified for the applicable position;
>
> 3.  he suffered an adverse employment action; and
>
> 4.  similarly situated persons not in the protected class were treated more favorably.
>
> <u>Fane</u>, 480 F.3d at 538; <u>Ptasznik v. St. Joseph Hospital</u>, 464 F.3d 691, 696 (7th Cir. 2006); <u>Sublett</u>

v. John Wiley & Sons, Inc., 463 F.3d 731, 737 (7th
Cir. 2006).

Once Plaintiff has established this *prima facie* case of
discrimination, the burden of production shifts to Defendant who
must "offer a permissible, nondiscriminatory reason for the
adverse employment action."  Fane, 480 F.3d at 538.  The burden
then shifts back to the Plaintiff who must show that the
proffered reason is merely a pretext for discrimination.  "The
focus of a pretext inquiry is whether the employer's reason is
honest, not whether it is accurate or wise."  Barricks v. Eli
Lilly and Co., 481 F.3d 556, 560 (7th Cir. 2007).  Despite these
shifting burdens, "[t]he ultimate burden of persuading the trier
of fact that the defendant intentionally discriminated against
the plaintiff remains at all times with the plaintiff."  Texas
Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).

There is no dispute that Plaintiff, who is African-
American, is a member of a protected class.  There is also no
dispute that Plaintiff suffered an adverse job action, the
denial of the CNC jobs, and his old job, the acquisition of
which would have led to higher pay and additional benefits.
Defendant does dispute, however, whether Plaintiff was qualified
for the CNC jobs and whether Plaintiff can show that a similarly
situated person was treated more favorably.  It is undisputed
that Plaintiff was considered "unqualified" for the CNC jobs

because he was subject to the 25 pound weight restriction.  This
requirement is closely related to the pretext argument and will
be addressed below.

Plaintiff points specifically to two individuals whom he
contends are similarly situated: Kirby McLaughlin and Gary
Edwards.  The only evidence that Plaintiff presents that these
individuals are similarly situated is his own affidavit.  He
states with respect to Edwards:

> Within my personal knowledge, there was a Caucasian
> employee, Gary Edwards, in the same job, shame shift
> and department (first shift, Department 400), who
> would have had the same supervisor, Bill Coward, who
> is also Caucasian.  Mr. Edwards was allowed to return
> to work after an injury despite not being able to
> lift, and was further allowed or provided income
> security benefits.

> (Pl. Aff. ¶ 25).

With respect to McLaughlin, Plaintiff states:

> I have personal knowledge that a Caucasian employee,
> Kirby McLaughlin, was working in Department 106 (the
> department for which I was the successful bidder), who
> was allowed to work with a 10-pound weight restriction
> and perform, the job of breaking out the cut parts.
> She is still working in Department 106 (See Exhibit B
> attached hereto).  Within my knowledge, she would have
> had the same supervisor and would have been on the
> same shift as I was had Deere allowed me to go to work
> in Department 106 in that position.]

> (Pl. Aff. ¶ 26).

Plaintiff argues in conclusory fashion that these two paragraphs
of his affidavit establish that there were two similarly

14

situated employees who were given the positions that Plaintiff sought.

First, Plaintiff's assessment of the employment conditions of McLaughlin and Edwards have no support in the record. "[I]t is well settled that self-serving statements contained in an affidavit will not defeat a motion for summary judgment when those statements are without factual support in the record." Smith v. Potter, 445 F.3d 1000, 1008 (7th Cir. 2006) (quotation marks and citations omitted); See also Cichon v. Exelon Generation Co., L.L.C., 401 F.3d 803, 810 n.8 (7th Cir. 2005); and see Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990) ("The object of this provision [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). The only evidence Plaintiff points to in the record is a time sheet which shows that McLaughlin worked in department 106, shift two, on April 15, 2007. There is no evidence of any weight restriction or even any evidence of what job McLaughlin was performing. Plaintiff also has presented no evidence with respect to Edwards (except for his own statements). Therefore, Plaintiff has presented no competent evidence of any similarly situated

employee who was treated more favorably.[5]  He has failed to carry
his *prima facie* burden.

Even if Plaintiff's affidavit constitutes competent
evidence,[6] he still has not established that McLaughlin or
Edwards are similarly situated.  "A similarly situated employee
is one who is 'comparable to plaintiff in *all material
respects*.'"  Perez v. Illinois, 488 F.3d 773, 773 (7th Cir.
2007) (quoting Crawford v. Ind. Harbor Belt RR. Co., 461 F.3d
844, 846 (7th Cir. 2006) (emphasis in original)).  In making
this determination, Courts generally "consider whether the
employees 1) had the same job description; 2) were subject to
the same standards; 3) were subject to the same supervisor; and
4) had comparable experience, education, and other
qualifications."  Boumehdi v. Plastag Holdings, LLC., ___ F.3d
___, 2007 WL 1583980, *6 (7th Cir. 2007).  In this particular

---

[5] Plaintiff goes on to list the names of other employees who were
"allowed to return to work from injuries and were provided
income security benefits."  (Pl. Aff. ¶ 27).  There is no
evidence to support this contention nor is there even an
argument that these employees are similarly situated in all
material respects.  As such, Plaintiff has failed to establish a
prima facie case with respect to the income security benefits
claim and it must fail as a matter of law.

[6] Plaintiff's affidavit itself can be considered "evidence in the
record."  See Buie v. Quad/Graphics, Inc., 366 F.3d 496, 504
(7th Cir. 2004) ("The record, moreover, may include the self-
serving affidavit itself, provided that the affidavit meets the
usual requirements for evidence on summary judgment – including
the requirements that it be based on personal knowledge and that
it set forth specific facts showing that there was a genuine
issue for trial." (citations omitted)).

situation, a material issue is whether an employee who had a similar lifting restriction as Plaintiff was treated more favorably.  <u>Barricks</u>, 481 F.3d at 559-560 ("The 'similarly situated' test is a flexible, commonsense inquiry whose requirements vary from case to case.").  With respect to Edwards, Plaintiff only indicates that he was not "able to lift."  There is no evidence of what weight restriction Edwards was under, whether he also was incapable of pushing and pulling with other weight restrictions, or any other details of Edwards' job.  Plaintiff does not indicate that Dr. Candler examined Edwards or that he agreed or disagreed with Edward's treating physician.  Plaintiff does not even place Edwards in any type of time context: there is no suggestion that Edwards was employed by Defendant during the relevant time period.  The purpose of comparison "is to determine whether there are enough common factors between a plaintiff and a comparator – and few enough confounding ones – to allow for a meaningful comparison in order to divine whether discrimination was at play."  <u>Id.</u> at 560.  Plaintiff has presented insufficient evidence to make any comparison meaningful.

With respect to McLaughlin, Plaintiff states that she worked in Department 106 with a 10 pound weight restriction[7] and

_____

[7] Defendant disputes that McLauglin was under a 10 pound weight restriction.  According to a business record attached to

performed specifically the "job of breaking out the cut parts."
The job description, that Plaintiff provides as Exhibit A to his
affidavit, indicates that the CNC job requires more than just
"breaking out the cut parts."  Other duties include forging,
cutting, setting, operating machinery, and other activities.  If
McLauglin is in fact limited to "breaking out the cut parts"
then she would not be comparable to an employee, like Plaintiff,
who would be required to perform all the CNC job functions.  As
such, she is not similarly situated.  In any event, Plaintiff
has offered no evidence that McLaughlin suffered the same injury
as himself, that she was evaluated by Dr. Candler, that her
treating physician did not agree with Dr. Candler's assessment,
that she was under the specific weight restrictions that
Plaintiff was operating under, or that she is otherwise similar
in terms of qualifications.  There is also no evidence that she
bid on the same CNC jobs as Plaintiff at the same time.  As
Plaintiff has failed to present evidence to support his *prima
facie* burden, his claim must fail.

    Even assuming that all of the foregoing problems with
Plaintiff's proffer of Edwards and McLaughlin as similarly
situated employees could be overcome, there still would exist a
fatal hurdle impossible to overcome.  In light of Plaintiff's

---

D'Hooge's affidavit, McLauglin is under a 30 pound weight
restriction.

theory of discrimination that Dr. Candler has racial animus,
Edwards and McLaughlin are patently dissimilar because there is
no showing that Dr. Candler treated them in a fashion similar to
Plaintiff.  Plaintiff has presented no evidence that Dr. Candler
imposed weight restrictions on Edwards or McLaughlin.  There is
no evidence that any such weight restrictions were contrary to
their treating physician's restrictions (or lack thereof).
While Plaintiff focuses on the result of the weight restrictions
(that Edwards and McLaughlin were allowed to work in spite of
lower restrictions), he fails to focus on Dr. Candler's
involvement in either Edwards or McLaughlin's limitations.

Moreover, even if Plaintiff did manage to meet his *prima
facie* burden, Defendant has presented evidence that Plaintiff
was not given his old position back nor was he placed in the CNC
jobs because he had a 25 pound weight restriction imposed by Dr.
Candler.[8]  In order to show that this is merely pretext,
Plaintiff argues that the weight restriction is unsupported by
the record and therefore beyond belief.  Plaintiff specifically
argues that neither Dr. Lanzino, Dr. Cady, or Monson imposed the
across-the-board weight restriction of 25 pounds that was
imposed by Dr. Candler.  Plaintiff goes on to argue that as

---

[8] Enright indicates that the CNC job in Department 106 required
an operation to be able to lift, push, or pull more than 25
pounds.  It is undisputed that the CNC jobs in Department 106
and 114 are identical in requirements.

these medical professionals essentially disagreed with Dr. Candler, and as Dr. Candler performed no examination of his own, such a weight restriction is a deliberate falsehood and the real reason for Dr. Candler's assessment is because he is biased against Plaintiff because of his race.

The Court initially notes that Plaintiff does not tie up Dr. Candler's assessment (and alleged discriminatory animus) with the actual person who decided that Plaintiff could not perform his old job or the CNC jobs.  Indeed, Plaintiff does not even identify that decision-maker nor does he indicate how Dr. Candler's animus, if any, could be imputed to that decision-maker.  That is, Plaintiff has presented no evidence that a decision-maker was biased, nor has he presented evidence that any such decision-maker knew that Dr. Candler was biased.  In Alexander v. Wisconsin Department of Health and Family Services, 263 F.3d 673 (7th Cir. 2001), the plaintiff, Robert Alexander, was subject to a 10-day suspension imposed by Susan Moritz, his supervisor, based on a report by Donna Carlson, an intermediate supervisor, concerning Alexander's failure to "strap carts" when instructed to do so.  The plaintiff alleged that the suspension was the result of race discrimination by Moritz and Carlson.  In assessing whether Alexander would show pretext, the Seventh Circuit stated:

> Moritz's reliance on Carlson's description of the cart
> strapping incident would not be an acceptable basis
> for the adverse employment action taken against
> Alexander if Alexander could show that Carlson
> harbored racial animus towards him, and that Moritz
> knew or should have known of Carlson's bias.
> Likewise, Alexander could also undermine the
> defendants' stated reason for his suspension by
> showing that Moritz herself carried a bias towards
> Alexander. Alexander has not shown, however, that
> Carlson's actions reflected a racial animus towards
> him that Moritz knew or should have known about, or
> that Moritz herself carried a bias that tainted her
> role as a decision-maker.

> Id. at 685-686 (citations omitted).

In order to show pretext, Plaintiff must show that the decision-maker was biased or that he (or she) knew that Dr. Candler was biased. Even if Plaintiff could prove that Dr. Candler was biased against Plaintiff on account of his race, he has failed to tie any such bias with the actual decision-maker.

Nonetheless, Plaintiff presumably is arguing that Dr. Candler's bias is imputed to the decision-maker because he is "an employee without formal authority to materially alter the terms and conditions of a plaintiff's employment [who] nonetheless uses [his] 'singular influence' over an employee who does have such power to harm the plaintiff for racial reasons . . ." Brewer v. Board of Trustees of University of IL, 479 F.3d 908, 917 (7th Cir. 2007). That is, Dr. Candler is the functional decision-maker because his 25 pound weight restriction alone led to the denial of the jobs at issue. As

such, Plaintiff must show that Dr. Candler's 25 pound weight restriction is a "lie" or a reason that is dishonest or that did not genuinely motivate the relevant decision.  Burks v. Wisconsin Department of Transportation, 464 F.3d 744, 754 (7th Cir. 2006).  At most Plaintiff has merely shown that Defendant may have been mistaken in its assessment of Plaintiff's weight restrictions.  Plaintiff only has shown a disagreement between medical professionals.

This disagreement is highlighted by the various letters and explanations that Plaintiff himself offers as evidence.  The documents reveal that defendant, through Erich Wessels and Dr. Candler, contacted and solicited Dr. Lanzino, Dr. Cady, and Monson, to specify and explain Plaintiff's weight restrictions. According to Dr. Candler, Dr. Lanzino's response to such a request convinced him that a 25 pound weight restriction was appropriate.  (Candler Aff. ¶ 7).  Dr. Cady himself indicated that he did not have expertise in an FCE and referred Defendant to Monson's FCE without giving his own opinion as to what weight restrictions Plaintiff should be working under.  (Pl. Exs. 6 and 8).  Monson, whose FCE provided detailed and specific weight restrictions, indicated in summary fashion that a "25# restriction on a frequent basis would be appropriate."  (Wessels Aff, Ex. 3).  Based on this input and his undisputed knowledge of Plaintiff's history (a history that included a 25 pound

weight restriction), Dr. Candler believed that an across-the-board 25 pound weight restriction is appropriate.

Plaintiff has not shown that such reasoning is beyond belief or is a lie.  Instead, Plaintiff would have this Court independently determine whether the decision was correct. As the Seventh Circuit has noted:

> It is not our role to determine the competency of or interfere in employment decisions simply where we believe an employer has made a poor choice. Federal courts have authority to correct an adverse employment action only where the employer's decision is unlawful, and not merely when the adverse action is unwise or even unfair. "We do not sit as a super-personnel department with authority to review an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation."

Ptasznik, 464 F.3d at 697 (quoting Balance v. City of Springfield, 424 F.3d 614 (7th Cir. 2005)).  Similarly, this Court cannot be tasked with determining the correctness of a medical decision based on the record before the Court.  While Dr. Candler's decision may not be the wisest or most accurate assessment of Plaintiff's weight restriction, Plaintiff has not established that it is implausible or baseless.  Fane, 480 F.3d at 541.  No reasonable jury, based on the evidence before the Court, would conclude that Defendant intentionally discriminated against Plaintiff, in any respect, on account of his race.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant on May 1, 2007 [Doc. 13] is GRANTED, the Motion to Strike Affidavit of William Candler filed by Plaintiff, William McGowan, on June 19, 2007 [Doc. 17] is DENIED, and the Motion to Strike Affidavit of Richard D'Hooge filed by Plaintiff on June 19, 2007 [Doc. 19] is MOOT.  The Clerk is directed to enter Judgment in favor of Defendant, Deere & Company, and against Plaintiff, William McGowan.  CASE TERMINATED.


Entered this  20th  day of July, 2007

                                    s/ Joe B. McDade
                                 JOE BILLY McDADE
                              United States District Judge